UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUTO INTERNET MARKETING, INC.

    Plaintiff,

v.                                     Case No. 8:08-cv-1868-T-27MAP

TARGUS INFORMATION CORP.,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss Plaintiff's Complaint and Alternative Motion to Strike (Dkts. 3, 7), to which Plaintiff has responded in opposition (Dkt. 10). Upon consideration, Defendant's motion is GRANTED in part and DENIED in part.

*Background*

Plaintiff, Auto Internet Marketing, Inc., is in the business of selling sales lead lists to automobile dealerships across the country. (Dkt. 2, ¶ 4). Defendant, Targus Information Corp., provides software that verifies the viability of sales leads. (Dkt. 2, ¶ 5). On or around January 8, 2008, the parties entered into contract by which Plaintiff received a license to use Defendant's services. (Dkt. 2, ¶¶ 6, 7). Specifically, Plaintiff paid a monthly service plan fee of $3,600.00 for up to 30,000 queries per month. (Dkt. 2, ¶ 8).

Plaintiff alleges that prior to entering into the contract, Defendant represented that its services verified sales leads more accurately and at a lower cost than Plaintiff's in-house process. (Dkt. 2, ¶

1

22). Plaintiff alleges that it relied on these representations in entering into its contract with Defendant and that it laid off its in-house lead verification employees. (Dkt. 2, ¶¶ 23, 28). Plaintiff further alleges that Defendant's software "is a sham and does not verify leads." (Dkt. 2, ¶ 15).

Plaintiff brought this action against Defendant for breach of contract (Count I), fraudulent inducement (Count II), and violation of the Florida Deceptive and Unfair Trade Practices Act, ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* (Count III). (Dkt. 2). In the instant motion, Defendant argues that the breach of contract claim should be dismissed because the contract effectively disclaims liability for the alleged breach and the claim is not ripe, that the fraudulent inducement claim is barred by Florida's economic loss rule, and that the FDUTPA claim fails to allege a deceptive or unfair trade practice. Defendant also argues that Plaintiff's demand for consequential damages and attorneys' fees in Court I should be stricken.

## *Standard*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n.43 (11th Cir. 2008). Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "raise a right to relief above the speculative level." *Id.* at 1964-65. A conclusory statement of the elements of a cause of action will not suffice to state a claim under Rule 8. *Id.* A well-pleaded complaint, however, may survive a motion to dismiss even if it appears "that recovery is very remote and unlikely." *Id.* at 1965 (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).

*Discussion*

*1.   Breach of contract*

In Count I, Plaintiff alleges that Defendant breached the parties' contract by providing software that "is a sham and does not verify leads." (Dkt. 2, ¶ 15). Defendant argues that Count I should be dismissed because the parties' contract effectively disclaimed any warranties for performance-related issues. Alternatively, Defendant argues that the claim is not ripe because Plaintiff has not provided Defendant with the contractually-required notice of the breach and opportunity to cure.

Defendant's first argument is based on an alleged disclaimer of warranties in Paragraph 9 of the contract, which provides:

> **9.   Warranty.**
>
> . . . .
>
> B. TARGUS*info* does not warrant the uninterrupted or error-free operation of the Licensed Services.
>
> . . . .
>
> D. EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, ACCURACY, OR FITNESS FOR A PARTICULAR PURPOSE. TARGUSINFO DOES NOT WARRANT THAT THE LICENSED SERVICES WILL FULFILL ANY OF CLIENT'S PARTICULAR PURPOSES OR NEEDS.
>
> (Dkt. 2, Exh. A, at 4).

Defendant argues that the disclaimers in Paragraphs 9B and 9D are enforceable under Virginia law and bar Plaintiff's claim.[1] Nonetheless, Defendant acknowledges that Paragraph 9A

---

[1] The parties agree that Virginia law governs Count I based on a choice of law provision in the contract. In the instant motion, Defendant relies on the Virginia Uniform Commercial Code and case law interpreting the U.C.C. (Dkt. 7 at 4). Plaintiff has not disputed the application of the U.C.C. to the contract, which is alleged to be a software licensing agreement. (Dkt. 2, ¶5). *See* Stephen J. Sand, *Validity, Construction, and Application of Computer Software Licensing Agreements*, 38 A.L.R. 5th 1 § 9 (1996) (surveying cases explicitly or implicitly applying the U.C.C. to software license agreements); *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 138 n.2 (2d Cir. 2005) (same).

3

of the contract provides: "TARGUS*info* warrants that the Licensed Services have been designed in a good workmanlike manner in accordance with applicable specifications and industry standards." (Dkt. 2, Exh. A at 4).

Plaintiff has adequately alleged a breach of the "good workmanlike manner" provision in Paragraph 9A. Software that is a "sham" and fails to work at all, as alleged, cannot be said to have been designed in a good workmanlike manner in accordance with applicable specifications and industry standards. *Cf. Mann v. Clowser*, 59 S.E.2d 78, 84 (Va. 1950) (in construction case, noting that the phrase workmanlike manner means "in accordance with good usage and accepted practices in the community in which the work is done"). Plaintiff's allegations are sufficient to allege a breach of the terms in Paragraph 9A.

Furthermore, Defendant's argument that Paragraphs 9B and 9D void the language in Paragraph 9A is, at best, premature on a motion to dismiss. Paragraph 9D expressly states that the general disclaimer in that paragraph applies "except as otherwise provided in this agreement." Paragraph 9B provides only a narrow disclaimer -- that Defendant does not warrant error free or interrupted service -- which also does not facially contradict the provisions of Paragraph 9A. Plaintiff's motion to dismiss is therefore denied on this ground.

Defendant next argues that Count I should be dismissed because Plaintiff failed to provide notice of Defendant's alleged breach. Defendant relies on Paragraph 13 of the contract, which provides in relevant part:

> **13.  Rights and Obligations Upon Termination**.
> Either party may terminate this Agreement if: (I) the other party commits a material breach of the Agreement; and said breach has not been cured to the reasonable satisfaction of the non-breaching party within thirty (30) days of the date of notice from the non-breaching party stating in detail the nature of said breach . . . .
> (Dkt. 2, Exh. A at 5).

Defendant argues that Plaintiff failed to give the required notice and that the claim is therefore not ripe.

"The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984). "[C]ourts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Great Falls Hardware Co. of Reston v. S. Lakes Vill. Cent. Assocs., Ltd.*, 380 S.E.2d 642, 644 (Va. 1989) (quoting *Wilson*, 313 S.E.2d at 398). In the instant case, Paragraph 13 requires a party to provide notice and an opportunity to cure if it intends to terminate the contract; it does not require such notice before an action may be brought to enforce the contract. Pursuant to well-settled Virginia law, the Court will not read into the contract an additional notice requirement.

Based on the foregoing, Defendant's motion to dismiss Plaintiff's claim for breach of contract (Count I) is denied.

2.  *Fraud in the inducement*

Defendant next argues that Plaintiff's claim for fraud in the inducement is barred by Florida's economic loss rule. Although the parties agree that Virginia law governs Count I for breach of contract, the parties disagree as to which state's law governs Plaintiff's fraudulent inducement claim. Before turning to the merits of Defendant's argument, the Court addresses whether Florida or Virginia law governs the claim.

Plaintiff initially argues that Virginia law governs the claim based on the choice of law provision in the contract. Although the contract between the parties does contain a Virginia choice of law clause, it provides only that "This Agreement shall be governed and construed and enforced

in accordance with the laws of the Commonwealth of Virginia." (Dkt. 2, Ex. A, ¶ 23). It is well-established that this type of narrow choice of law provision, which specifically relates only to the "agreement," does not encompass related tort claims. *See Green Leaf Nursery v. E.I. duPont de Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003); *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1012 (S.D. Fla. 1992).

Absent a choice of law provision, a federal court sitting in diversity applies the choice of law rules of the state in which the court is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001). Florida applies the "most significant relationship" test to determine which state's law applies to tort claims. *See Garcia v. Pub. Health Trust of Dade County*, 841 F.2d 1062, 1065 (11th Cir. 1988); *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). The following factors are considered when determining which state has the most significant relationship to the tort at issue: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Garcia*, 841 F.2d at 1064 (quoting Restatement (Second) of Conflict of Laws, § 145).

Based on a balancing of these factors, Florida law governs Plaintiff's fraudulent inducement claim. Plaintiff alleges that the injury and the conduct which caused the injury occurred in Florida. (Dkt. 2, ¶ 3). Although Defendant is a Delaware corporation and has its primary place of business in Virginia, Plaintiff is a Florida corporation and conducts its business in Florida. (Dkt. 2, ¶¶ 1, 2). These factors point to Florida as having the most significant relationship to the claim. Accordingly, Plaintiff's fraudulent inducement claim is governed by Florida law and Florida's economic loss rule.

The economic loss rule prevents one party from suing another in tort when there is contractual privity between the parties and the damages suffered are solely economic. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004); *see also Indem. Ins. Co. of N. Am. V. Am. Aviation, Inc.*, 399 F.3d 1275, 1276 (11th Cir. 2005). The economic loss rule does not, however, bar tort actions based on acts "independent of the contractual breach even though there exists a breach of contract action." *HTP v. Lineas Aereas Costarricenses*, 685 So. 2d 1238, 1239 (Fla. 1996). Thus, a claim for fraudulent inducement requires "proof of facts separate and distinct from the breach of contract." *Id.*

In its claim for fraudulent inducement, Plaintiff alleges that Defendant falsely represented that its software verified leads: (1) with a better accuracy than Plaintiff's method; and (2) at a lower cost than Plaintiff's method. (Dkt. 2, ¶ 22). The contract addresses both of these representations: it specifically disclaimed the accuracy of Defendant's services, and it specified the monthly cost of Defendant's services. "A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005). As pled, Plaintiff fails to allege a claim for fraudulent inducement. Defendant's motion to dismiss the fraudulent inducement claim (Count II) is therefore granted.

3. FDUTPA

Defendant next argues that Plaintiff's claim pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") should be dismissed for failure to state a claim. To state a claim under FDUTPA, Plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). In the instant

motion, Defendant argues that Plaintiff fails to allege a deceptive or unfair practice, including reasonable reliance on the challenged practice.

A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See id.* (internal citation and quotations omitted). It is well-established that FDUTPA applies to any act or practice "even as between purely commercial interests" *Beacon Prop. Mgm't, Inc. v. PNR, Inc.*, 890 So. 2d 274, 278 (Fla. 4th DCA 2004), and that business entities may sue for damages, *True Title, Inc. v. Blanchard*, No. 6:06-cv-1871, 2007 WL 430659, at *4 (M.D. Fla. Feb. 5, 2007) (citing *Beacon Prop. Mgm't, Inc.*, 890 So. 2d 274 at 278). An action giving rise to a breach of contract may also constitute an unfair or deceptive act. *See PNR, Inc. v. Beacon Prop. Mgm't*, 842 So. 2d 773, 777 (Fla. 2003).

In Count III, Plaintiff incorporates the pertinent allegations from Counts I and II: that Defendant misrepresented facts concerning the accuracy of its software and that Defendant's software is a sham. (Dkt. 2, ¶ 33). Plaintiff also alleges that "Targus' actions were unfair, unconscionable, and therefore, unlawful pursuant to Florida's Deceptive and Unfair Trade Practices Act." (Dkt. 2, ¶¶ 30-36). At this stage of the litigation, the Court finds that Plaintiff has adequately alleged a claim pursuant to FDUTPA. The licensing of software that is a "sham" and which does not perform its stated purpose is arguably unfair, unethical, and unscrupulous. *Cf. H & J Paving of Fla., Inc. v. Nextel, Inc.*, 849 So. 2d 1099, 1100 (Fla. 3d DCA 2003) (remanding case for consideration of damages where plaintiff alleged that defendant sold it equipment that was useless and obsolete). Plaintiff's allegations, while sparse, are sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 127 S. Ct. 1955 at 1964-65.

Defendant's alternative argument concerning Plaintiff's reasonable reliance is premature on a motion to dismiss, as this is not an element of a FDUTPA claim. Defendant's motion to dismiss Plaintiff's FDUTPA claim (Count III) is therefore denied. Defendant's request for attorney's fees incurred in defense of this claim is also denied.

### *Motion to Strike*

Defendant also moves to strike Plaintiff's demand for consequential damages and attorneys' fees in Count I, pursuant to Federal Rule of Civil Procedure 12(f). Specifically, Defendant argues that Plaintiff is precluded from recovering consequential damages by Paragraph 10 of the contract and that Plaintiff's request for attorneys' fees fails to identify an adequate basis for such an award.

Paragraph 10 of the contract provides that Defendant shall not be liable for, among other damages, "consequential losses or damages." (Dkt. 2, Exh. A, ¶ 10). Plaintiff fails to address Defendant's argument on this claim, and the demand for consequential damages in Count I is therefore stricken.

With respect to Plaintiff's claim for attorney's fees, it is well-established that in federal litigation, a prevailing litigant generally "may not collect an attorney's fee from his opponent unless authorized by either a federal statute or an enforceable contract between the parties." *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). Plaintiff relies on Paragraph 6 of the parties' contract, which provides, in relevant part that "[Plaintiff] shall be responsible for any reasonable attorneys' fees and costs incurred by Targus*info* related to collection of unpaid obligations under this Agreement." (Dkt. 2, Exh. A).

Although the plain language of this provision applies only to Defendant's ability to collect attorneys' fees and costs, Plaintiff contends that Fla. Stat. § 57.105(7) converts this language to a reciprocal provision.[2] Plaintiff has not, however, provided authority for the application of this Florida statute, where the parties agree the contract is to be construed in accordance with Virginia law. *See Precision Tune Auto Care, Inc. v. Radcliffe*, 815 So. 2d 708, 710 (Fla. 4th DCA 2002) (finding that this section did not apply to contract with Virginia choice of law provision). Plaintiff argues no other basis for attorneys' fees. The request for attorneys' fees in Count I is therefore stricken.

### *Conclusion*

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. 3) is **DENIED IN PART** as to Counts I and III and **GRANTED IN PART** as to Count II, which is dismissed, and as to Defendant's alternative Motion to Strike, as set forth herein.

**DONE AND ORDERED** in chambers this 5th day of December, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of record

---

[2] Fla. Stat. § 57.105(7) provides:
> If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This subsection applies to any contract entered into on or after October 1, 1988.